IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MEMORY INTEGRITY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 13-1804 GMS |
| | ) |
| INTEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

## I. INTRODUCTION

On November 11, 2013, the plaintiff Memory Integrity, LLC ("Memory Integrity") initiated this action against the defendant Intel Corporation ("Intel") alleging that various Intel multicore processors (collectively, the "accused products") infringe one or more of four (4) identified patents (collectively, the "patents-in-suit").[1] (D.I. 1.) Presently before the court is Intel's Motion to Transfer Venue to the District of Oregon pursuant to 28 U.S.C. § 1404(a). (D.I. 10.) For the reasons that follow, the court will grant the motion.

---

[1] The patents-in-suit include U.S. Patent numbers 7,296,121 ("the '121 patent"); 7,103,636 ("the '636 patent"); 7,107,409 ("the '409 patent"); and 8,572,206 ("the '206 patent"). (D.I. 11 at 5.)

On or about the same day, Memory Integrity filed substantively similar actions against nineteen other defendants and all of the pending cases have since been proceeding together for pretrial scheduling purposes. (*See* 13-cv-1795 (GMS); 13-cv-1796 (GMS); 13-cv-1797 (GMS); 13-cv-1798 (GMS); 13-cv-1799 (GMS); 13-cv-1800 (GMS); 13-cv-1801 (GMS); 13-cv-1802 (GMS); 13-cv-1803 (GMS); 13-cv-1805 (GMS); 13-cv-1806 (GMS); 13-cv-1807 (GMS); 13-cv-1808 (GMS); 13-cv-1809 (GMS); 13-cv-1810 (GMS); 13-cv-1811 (GMS).) Only one of the four patents asserted against Intel—the '121 Patent—is asserted in those actions. Memory Integrity and the defendants in the related cases have agreed to stay all of those actions pending *inter partes* review challenging the validity of the '121 patent. (*See, e.g.*, 13-cv-1801 (GMS), D.I. 23.) Intel states that it did not participate in the preparation or filing of any of the IPRs and did not join the stipulation because of the three additional patents Memory Integrity has asserted against Intel. (D.I. 34.) Memory Integrity asserts that because it is possible the litigation involving the '121 patent and the other defendants could proceed in Delaware, transferring Intel's case to Oregon would "significantly impair judicial economy by requiring two courts to deal with the same issues, and would create a significant risk of inconsistent results." (D.I. 35.)

## II. BACKGROUND

Memory Integrity is a Delaware corporation with its principal place of business in Wilmington, Delaware.[2] (D.I. 1 at ¶ 2.) Intel is a Delaware corporation with its principal place of business in Santa Clara, California. (*Id.* ¶ 3.) Memory Integrity is the assignee and owner of the patents-in-suit. (*Id.* ¶¶ 7–15.)

The patents-in-suit are generally related to technology for improving cache coherency technology. (*Id.* ¶ 17.) Memory Integrity alleges that Intel has directly infringed and continues to directly infringe the patents-in-suit, both literally and under the doctrine of equivalents. (*Id.* ¶¶ 17, 23, 29, 35.) On January 23, 2014, Intel filed a motion to transfer venue to the District of Oregon. (D.I. 10.)

## III. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Under this provision, a district court may exercise "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

The court undertakes a two-step inquiry in order to resolve a motion to transfer. "The court first asks whether the action could have been brought in the proposed transferee venue and then determines whether transfer to a different forum would best serve the interests of justice and

---

[2] The court notes that Memory Integrity was formed on October 2, 2012 and is a non-practicing entity whose business is licensing rights to its intellectual property. (*See* D.I. 12 at Ex. 1; D.I. 17-1 at ¶ 3.)

2

convenience." *Smart Audio Techs., L.L.C. v. Apple, Inc.*, 910 F. Supp. 2d 718, 724 (D. Del. 2012). At each step, the defendant has the burden to demonstrate that a transfer is appropriate, *Jumara*, 55 F.3d at 879–80, and "unless the balance of convenience of the parties is *strongly* in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

With regard to the second step of the inquiry, where the court considers whether the litigation would more conveniently proceed and the interests of justice be better served by transferring the case, the Third Circuit has instructed district courts to look to the various private and public interests protected by § 1404(a) rather than to any "definitive formula." *Jumara*, 55 F.3d at 879. The private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The public interests may include:

> the enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted).

## IV. DISCUSSION

Consistent with the two-step analysis detailed above, the court will first address the

question of whether this action might have been brought in the proposed transferee forum. Memory Integrity does not dispute Intel's assertion that the present action could have been brought in the District of Oregon. *See* 28 U.S.C. §§ 1338(a) and 1400(b); (D.I. 17 at 5.) Since Memory Integrity could have brought the present action in the District of Oregon, the court proceeds to the second step of the transfer analysis—weighing of the *Jumara* factors.

### 1. Private Interest Factors

#### a. *The Plaintiff's Forum Preference*

Although not dispositive of the transfer inquiry, the first private interest factor—the plaintiff's choice of forum—is ordinarily given heightened deference in the transfer analysis. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) ("To be sure, the Third Circuit places significance on a plaintiff's choice of forum."); *see also Smart Audio*, 910 F. Supp. 2d at 724.

Memory Integrity has chosen to file suit in a district where it is physically located; therefore, its forum choice may be afforded increased weight in the analysis, but less than paramount consideration. In this instance, however, describing Delaware as where Memory Integrity is "physically located" does not fully address the situation. Intel asserts that the initiation of the lawsuit in Delaware is not material to the transfer analysis because Memory Integrity is a non-practicing entity with no facilities, operations, employees, or presence in Delaware. (*See* D.I. 11 at 12.) The court agrees, in part, with Intel's position and concludes that Memory Integrity cannot reap the full benefits of heightened deference as a result of its minimal connection to Delaware. As such, this factor weighs minimally against transfer. *See Ithaca Ventures k.s. v. Nintendo of America Inc.*, No. 13-824-GMS, 2014 WL 4829027, at *2–3 (D. Del. Sept. 25, 2014)

(the weight afforded to plaintiff's choice of forum was minimized where recent corporate organization was determined to be motivated significantly by litigation efforts).

### b. The Defendant's Forum Preference

The second private interest factor is the defendant's choice of forum. *Jumara*, 55 F.3d at 879. Intel's largest design and development facility is located in Hillsboro, Oregon. (Declaration of David L. Hill, ("Hill Decl.") ¶ 4.) Intel has over 37,000 employees and nine facilities in Oregon. (*Id.*) Intel asserts that although it is a Delaware corporation, it does not have any connections in Delaware that are relevant to this case. (D.I. 11 at 4.) Intel has no offices or facilities in Delaware, does not develop or manufacture any products in Delaware, does not maintain technical documents or market information relating to the accused products in Delaware, and does not have any employees in Delaware who worked on the cache management functionality of the accused products. (Hill Decl. ¶¶ 10–14.)

Memory Integrity asserts that Intel's choice of forum is not entitled to significant weight because Intel has previously demonstrated willingness to litigate in Delaware. (D.I. 17 at 8.) The court disagrees and finds the fact that Intel initiated unrelated cases in the District of Delaware is irrelevant to the transfer analysis in this case. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (finding "clear error" in district court's determination that defendant's prior unrelated lawsuits in the district weighed against transfer because "[t]he Supreme Court has long held that § 1404(a) requires 'individualized, case-by-case consideration of convenience and fairness.'" (citations omitted)).

This factor weighs in favor of transfer, although this factor is only given limited weight. *See Intellectual Ventures*, 842 F. Supp. 2d at 759 ("Under Third Circuit law, [a defendant's]

5

preference for an alternative forum is not given the same weight as [a plaintiff's] preference."); *CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009) ("While a defendant's preferred venue is a factor that the court considers, it is not sufficient to displace the plaintiff's own choice of venue.").

     *c. Whether the Claim Arose Elsewhere*

  The third private interest factor the court must consider is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes uses offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. §271(a)). This factor is generally neutral where the defendant in a patent infringement action operates on a national level as the infringement can be viewed as occurring in all districts. *Smart Audio*, 910 F. Supp. 2d at 730. Infringement claims, however, have even deeper roots in the forum where the accused products were developed. *Id.*; *see also Intellectual Ventures*, 842 F. Supp. 2d at 755 ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." (quoting *In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

  There is some dispute among the parties as to where the development of the products is centered. Intel asserts that the specific cache coherence technology of the accused products—the Sandy Bridge and Ivy Bridge processors—is the result of work done in Oregon such that Oregon is the better forum for this dispute. (D.I. 18 at 5.) Memory Integrity submits various publications to show the processors at issue were designed, developed and manufactured in Israel. (D.I. 17 at

6

10.) Intel does not dispute that some amount of relevant evidence may be located in Israel. Neither party provides an approximation of how many potential witnesses would be required to travel from Intel's facilities in Israel or how much relevant evidence is located in that location. The court finds it unnecessary to resolve this dispute and concludes that it is clear that no amount of product development or manufacture took place in Delaware. As such, this factor weighs in favor of transfer.

### d. *The Convenience of the Parties*

The court must also determine whether the proposed transferee forum would prove more convenient for the parties. *See Jumara*, 55 F.3d at 879. In evaluating the convenience of the parties, the court considers: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio*, 910 F. Supp. 2d at 731 (citation omitted).

As discussed above, Intel has a significant presence in Oregon as an employer and manufacturer. Additionally, Intel asserts that each of the named inventors on the patents-in-suit lived in Texas when the patents issued and, according to public records, still reside in Texas. (D.I. 11 at 5.) These facts favor transfer. On the other hand, Intel is a Delaware corporation, and the court has recognized that an entity's "decision to incorporate in Delaware suggest[s] that the inconvenience of litigating here is somewhat less than the court would ordinarily presume it to be." *Linex Techs.*, 2013 U.S. Dist. LEXIS 1924, at *15. Additionally, Intel is a large entity that has previously brought suit in the District of Delaware. (D.I. 17 at 7.) These facts disfavor transfer.

Accordingly, the court finds that this factor is neutral.

### e. *The Convenience of the Witnesses*

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. Considering the convenience of the witnesses and specifically whether witnesses "actually may be unavailable for trial in one of the fora," Intel has identified third-party witnesses located in California. (*See* D.I. 18 at 4.) The court has not been provided any evidence to rebut Intel's argument that "there is not a single known relevant witness" in Delaware. (D.I. 11 at 9.) Intel asserts that "[t]he foundation of the relevant functionality of the accused products was designed and developed in Intel's Oregon Facilities, Intel engineers with knowledge of the relevant functionality are located in Oregon, and documents relating to the relevant features of the accused products are in Oregon." (*See* Hill Decl. at ¶¶ 6–8.) There are no known third party witnesses in Delaware. (*Id.*) As such, the court finds this factor favors transfer.

### f. *The Location of Books and Records*

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in an alternative forum)." *Jumara*, 55 F.3d at 879. For location of books and records factor, the court has acknowledged that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Smart Audio*, 910 F. Supp. 2d at 732 (citation omitted). Although technological advances have made transportation of electronic evidence far less onerous, the court "cannot simply ignore the location of the relevant books and records." *Id.* (citing *In re Link_A_Media*, 662 F.3d at 1224).

The only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case. Intel's records, which are likely the most important records for this litigation are likely in Oregon. (D.I. 11.) In any event, the records of a party will be available in any court. There are no records identified as only being available in one of the two locations. Thus, this factor adds very little to the balancing. To the extent it has any marginal impact, however, it favors transfer.

## 2. Public Interest Factors

The parties limit their briefing on the public interest factors to: (1) "practical considerations that make the trial easy, expeditious, or inexpensive"; (2) "local interest in the controversy"; and "judicial economy." (D.I. 11; D.I. 17.) Therefore, because the parties are in agreement that all other factors are neutral, the court will not address the factors of: enforceability of the judgment; public policies of the fora; the court's familiarity with relevant state law; or relative administrative difficulty, as that relates to such issues as court congestion.

### a. Practical Considerations

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. With regard to the public interest factors, practical considerations weigh toward transfer and the remaining factors are neutral. Intel asserts that transfer would make trial easier and less expensive because potential witnesses and relevant evidence would not have to be brought across the country for pre-trial and trial proceedings. (D.I. 11 at 13.) Memory Integrity argues that witnesses from Israel will also be involved in the pretrial and trial proceedings, for whom travel to Oregon would be significantly more burdensome than travel to Delaware. Even so, the court finds the complete lack of any potential party witness in

9

Delaware instructive and finds that it is more practical for the case to be heard in Oregon. Thus, the court concludes that the "practical considerations" factor weighs in favor of transfer.³

### b. *Local Interest in the Litigation*

The transfer analysis also requires that the court examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. A patent infringement action is can be described as a national controversy. *See Smart Audio*, 910 F. Supp. 2d at 733–34 (citing *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 375 (D. Del. 2012)). Intel is a major employer in Oregon, but it is also a Delaware corporation. As discussed above, the parties dispute where the design and manufacture of the products took place. Thus, this factor is neutral.

### c. *Judicial Economy*

Memory Integrity's primary argument against transfer relates to the multiple pending lawsuits also filed in November 2013 alleging infringement of the '121 patent. (D.I. 17 at 17–19.) Memory Integrity asserts that because of the complex technology of the '121 patent, consideration of judicial economy weighs heavily against transferring the case as it would require two different courts to become familiar with the patent, accused technology, and relevant industry of the defendants' products. (D.I. 17 at 17.) As previously discussed, all other actions involving the '121 patent have been stayed.⁴ The briefing on the instant motion was completed prior to the stay being entered in the other civil actions. The court concludes that Memory Integrity's stay pending

---

³ The parties filed a "Stipulation and order for leave for Plaintiff to File a first Amended Complaint and to Amend Scheduling Order" on January 30, 2015. (*See* D.I. 41.) The parties have agreed to amend various scheduling deadlines, including trial dates which is now proposed to begin in December 2016. The first deadline is on February 13, 2015, and relates to Memory Integrity's identification of Intel products it alleges infringe the '254 patent. (*Id.* at 2.)

⁴ *See supra* note 1.

10

resolution of *inter partes* review in the related cases mitigates judicial economy concerns. As such, this factor is neutral.

## V. CONCLUSION

Considering the *Jumara* factors as a whole, the court believes that Intel has met its burden of demonstrating that the interests of justice and convenience favor transfer. Notably, only Memory Integrity's forum preference weighs against transfer, and that preference was not afforded maximum deference in this case. On the other hand, several factors counsel transfer: the location where the claim arose; the location of relevant books and records; and practical considerations that might make trial easier and less expensive. Oregon is the logical and convenient place for this trial to take place. The balance of convenience tips strongly enough in favor of transfer.

For the reasons stated above, the court will grant Intel's Motion to Transfer to the District of Oregon (D.I. 10) pursuant to 28 U.S.C. § 1404(a).

Dated: February 13, 2015

UNITED STATES DISTRICT JUDGE